Baltimore County for decades has been deducting too much money from the paychecks of the employees who were older when hired, and the County should have known in 1979 that this was unlawful because the Department of Labor issued a reg saying that. The Commission issued its letter of determination in 2006 and sued in 2007. And this Court reversed the summary judgment in 2010, and in March 2014, you affirmed the partial summary judgment as liability, and the County did not comply with that decision. It continued to make these unlawful excessive contributions. So the issue before the District Court was what relief should be awarded to compensate the aggrieved employees who have been receiving less take-home pay for years? And the District Court's answer was zip. That was wrong because back pay is a mandatory remedy under the ADEA. When Congress enacted the ADEA, it chose to follow the FLSA remedial provisions. It altered them slightly, but that's what it adopted. And we know from Brooklyn Savings Bank and other decisions that back pay is mandatory under the FLSA. So it should be mandatory under the ADEA. And they haven't cited any case saying that it's not mandatory. In Lorillard v. Ponds, the Supreme Court stressed that when Congress adopted those FLSA remedies, it did so selectively. And they said because Congress adopted them selectively, when it did actually take something without changing it, you should enforce it the way it was enforced under the FLSA. Finally, we have cited an appellate court decision that holds that back pay is mandatory under the ADEA, and that's the EOC v. Massey-Ferguson case, 1979, 11th Circuit. In that, I'm sorry, 97. This statutory provision is not an example of clarity. And the judge below looked at the provision that I think he did that says in any action brought to enforce this chapter, the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate. You agree with me that's what he looked at? Yes. Right. Yeah. And that looks like it does, in fact, grant him the authority to do what as may be appropriate. It doesn't say that damages, it doesn't say these words that damages are mandatory. It doesn't say those words, does it? That's correct. Right. So in looking at it, it does say amounts owing to a person shall be deemed as unpaid minimum wages for purposes of 2016, 2017, and also that you look to the FLSA for enforcement. So I'm not so sure there's not some conflict between that or appearance of conflict between those two terms, between those two provisions I've talked about. If there is, how would you suggest we resolve it? Well, the problem with the district court is it looks... I'm not just looking at case hall necessarily, but you're telling us in the first instance how we... I'm looking at reading the statutory language and tell me how you are right and how we should know you are right in the way you would say we follow FLSA and make this mandatory. Yeah. Thank you. I think I understand the question, Your Honor. That fourth sentence is not the only sentence in that subsection. The sentence starts, the subsection starts, the provisions of this chapter shall be enforced in accordance with the provisions, remedies, and procedures in Section 216. Okay? So we look at 216. 216 says, of the FLSA, any employer who violates the provisions of 206 or 207 shall be liable to the employees affected in the amount of their unpaid... It does say that, but the statute, to make the statute be reconcilable on that point, don't you look at the statute and add, the way you would interpret it, add any other in front of such legal or equitable relief. Correct? I'm sorry. Where are you now? I'm looking at, in any action brought to enforce this chapter, the court shall have jurisdiction to grant, and the statute says, such legal and equitable relief. You read that to say any other such equitable relief because you say what's above is mandatory. That's correct. Is that correct? Yes. Yeah. Because you have to, because I agree that those two, the first sentence and the fourth sentence could be, you could interpret the fourth sentence... May appear to be in conflict somewhat. Right. Yes. And I'm saying, but you look at the statute. I think I understand your position. You say the top part is mandatory, FSLA type relief. That's mandatory. And you have to read this to carry it in, as I suggest, to make it make sense. Any other such legal or equitable relief. That's what you think, isn't it? That doesn't mean you necessarily lose the case. I'm just asking you that. Because don't you think that's what that means? It means any other. It doesn't mean anything that you think is appropriate because what if you think the above is not appropriate? You understand? I get my point. You're reading to say such additional relief. I understand. I mean... Yes. And I think that's how the courts have interpreted it in order to give those two sentences the most meaning. In other words, okay. You could... And why the other option, and that's exactly right, Judge Keenan makes my point. I say any other. She says such additional. Yes. It's the same point, I think. Yes. She would agree on that. It's the same point. Yes. But I'm asking, that's one way to look at it. The other way to look at it would say the bottom sentence, it follows on, it modifies the top, which says, as may be appropriate. In fact, as I think the district court looked at it and said, that modifies the top. So I'm not really limited and bound by the mandatory provisions of FLSA. That's two ways to look at the statute. Why do you say your way is right and how we should look at the most reasonable way or the way to read the statute? Because when a court is interpreting a statute and two provisions in two sentences in the same subsection appear to contradict each other or the second one appears to overrule the first one, the court should strive to interpret that subsection in a way that gives each of those sentences as much of its rational and normal meaning as possible. It's also a rule that later overrides former. We have a lot of canons in how you interpret it. I don't want to belabor this point too much. I thought you were going to say, and am I correct, isn't this a remedial statute? Yes. Isn't it a remedial statute? And don't we have instructions to look at remedial statutes in a way to accomplish the to remediate and protect the victims? I thought that's what your argument was going to be. And that would account for why you have to, in a remedial statute, why you would have to read it in a way that you suggest. Is that not what you think? I'd be happy to argue that as well. But let me point out in addition that five of the cases that have been discussed in this sentence, Laurel Art itself used the fourth sentence, Whittlesey, Goldstein, this Court's Duke v. Union Real, and Maxfield v. Sinclair out of the Third Circuit. And each of those times they used that sentence, they used it to say, yes, and in addition to back pay, you get front pay, you get reinstatement, okay? None of them, the county has cited no court. But the statute itself, the wording explicitly does not require that. It's not there. It doesn't require that because it doesn't say such additional. You're saying there's some other case that mandates, in this case, we read that as additional. It may be the right way to read it. The statute itself, I don't want to belabor this too much more with you, but the statute itself does not say that. You read it as additional. I'm not saying that that turns out to be wrong, but the statute doesn't say that, number one. And number two, I'm not aware, you say there's a statute, I mean a case that requires us in this context to read that as additional relief? That requires us to? No, but there is an appellate course that says that back pay is mandatory, and that's the Massey-Yardley case. In Massey-Yardley, we sued a car dealership for . . . I don't want to belabor that. I'll take it that there's a case that says it's mandatory, and your point that it is mandatory, and I'm sure you want us to read this as saying nothing in that second lower sentence, whatever sentence it is, Fort Worth or whatever, nothing in there overrides the correct. And I think that's required as a matter of principle statutory construction principles, that you don't want, that you don't read a fourth sentence in one subsection to negate the first sentence in the subsection if you don't have to, if you can give them both maximum force. Yeah, but that's the key, maximum force, and that's something I think you'd look for in a remedial statute. You would try to accomplish the purpose of the remedial statute, which is to read it in a way that most protects the victims that the statute is intended to protect. That's what I think. How far back do you say damages go in this case? How far back do they go? Well, when we initially sued, we asked for damages starting in 1996, which is three years before the first charge. But we're not asking for that at this point. Why aren't you? Because we can see that there were... Are you limited by law from asking for those? No. You're not asking... No. You're saying you're not asking for it because the EEOC sat around. Isn't that... Yes. Yes. We're saying there was unreasonable delay in the investigation period. Once we... Let me ask you this much. Do you think that kind of concept of latches or something can and should be applied in this case? I'm asking your position on that. I think the district court would have been... Well, first of all, no. I don't think latches properly applies because this court held in Lyons Partnership that... Okay. So what's the theory under which you say all damages are not due? Because the EEOC has prosecutorial discretion. Right. We are a law enforcement agency. But isn't that... Doesn't that conflict with your position that the statute mandates? No. FLSA says shall be liable in the amount of the unpaid minimum wages. It seems to me you're making a mediation argument or a settlement argument. You're saying, well, we think the EEOC essentially sat on the case unreasonably. And so we're not going to pursue it. But it seems to me that if the statute requires it, if it's mandatory, as you argue, and I think you make a very good argument, that then there is no basis. What's the basis for saying that there is no recovery for the period of time that the EEOC was not diligent in pursuing it? I'm just trying to understand how your arguments fit together. Right. Because when we say that the back pay is mandatory under the ADEA, that means that the court does not have discretion to say, oh, well, let's see how bad I think this is. I'll give you half of the back pay you want. The court does not have. Right. But the commission is a law enforcement agency. And law enforcement agencies always have discretion to decide which case am I going to take, what am I going to charge, and what kind of sentence am I going to seek. And you've charged in this case that these people were denied their benefits because of age going all the way back to whatever that date was, correct? They were required to pay too much for their benefits. Right. And so you think, do you have some theory on why they shouldn't get everything they're entitled to? If, in fact, you're right. If their rights have been violated because of their age, and they have lost money, correct? Isn't that correct? Yes. And you just say as a matter of what principle that the people that we represent in this action, we just don't think they ought to get paid what they are entitled to and what they've lost. What's that rationale? I know you have discretion, but it strikes me as a little bit odd for you to say, and it looks like you may be on the winning edge of this, that in fact there was age discrimination. We've been through that. And these people were discriminated against. That's the case you bring to us and go, but you know what? We're not going to press to make them whole. It's just too bad on them. What's the theory that you do that on? If I ask about some kind of latches, I try to say latches or latches type, somehow there's some theory that really we're bound by some doctrine that we can't do it rather than just discretion. What you've just said is your agency has decided they were discriminated against. We've said that repeatedly in this court. They've discriminated against. We're right. You said we're right, but never mind. We're not interested in making them whole. That's what it sounds like to me. Because just as a DA has to take into account the public interest. What is the public interest here? The public interest is not bankrupting the county. By the way, if you were a person who was discriminated against because of your age and you didn't get your benefits and others did get their benefits and the county has a system, why should the burden of the error by the county be placed on the back of the people who were discriminated against? What theory makes that right? But let me say, if you're right in your theory that it is mandatory and they're going to get recovery, why shouldn't that be balanced on the fund or on the county to make additional contributions? Why is it balanced on the back of the people who have already been victimized? That makes no sense to me. You have convinced me, Your Honor. The court should award full relief. So your position is you want all damages? I'm just asking. Your position is, you represent the EEOC. Your position, as I read your papers, they were discriminated against because of their age, but we don't want all the damages that otherwise they would be entitled to because of our discretion as an agency. We just don't want to get that form or whatever the factors are. But this is inherent in any law enforcement activity, Your Honor. No, it's not. No, it's not. No, it's not. How many criminal cases? You said the public interest in here. What is the public interest other than protecting the people who were discriminated against? And if there is a public interest, why should that public interest be on the back of the victims? I think the public interest would be something like we want the fund to continue and stay viable. Why shouldn't that be on the county who discriminated against these people? Why is it on their back and not the county to make it whole? And why would you say we're not going to press the county on this? We're not going to seek all that? I don't understand how and I just don't understand that. I've said it about eight times for me, but I haven't let you really answer why. Well, I don't think I have much new to add. It's just that there are many innocent parties involved. There are other people who have been paying into this pension fund who deserve to get their pension benefits and who wouldn't if the court awarded such a high back. Well, think about that for a second. These are people who've been getting their benefits properly so, correct? Because they aren't in the class. And to be sure that they not only got what they were entitled to in the past and they get what they want in the future, our clients will get what they should get in the future, but not all they should have gotten. Where's any equity in that? Where's any fairness in that? I just don't understand. The only reason that you might want that to happen as a matter of justice is that if you deserved for the past, that bankrupted the fund and nobody gets any pension benefits. Well, why should that be? Why shouldn't? I'm just asking now. Why shouldn't there be a remedy if Baltimore County discriminated? Baltimore County is on the hook for those damages and their obligations to the people now in the fund. Why does it fall on the victims rather than the actor? That's not the result I would recommend, but I'm happy if you take that position now. But I'm asking what your position is. Your position is you just have weighed by way of prosecutorial discretion that it's better to protect the fund, which has paid people what they should have paid and hope to pay in the future, but the people you represent have not been treated fairly, but just for part of that, they just, that's the way life goes for these poor people. And that's just how it is, I guess. I'm happy to see your sympathy for the victims, Your Honor. You're happy to get more, but you are not in front of this court seeking more, correct? You've limited what you're seeking. Well, we don't know yet what the commission is seeking. All we're doing now is we're asking, is the district court right that they get nothing? Wait one second. I thought you've indicated that you, for certain years, you were not going to seek recovery for those years. Am I wrong about that? That's correct. Well, why are you getting upset? That's what you said. I said you've decided you're not going to seek for certain years. Yes, and this court does not need to address yet what we're going to seek. We haven't gotten discovery to figure out what we want to seek. But you said what you're going to do. Aren't you, isn't the correct answer, Mr. Ramshaw, that you shouldn't be addressing remedy at this stage? What you've done is venture into the area of remedy, setting up a potential conflict with your legal argument that shall is mandatory. And now by discussing remedy rather than liability, your argument, your statutory argument of shall be liable is premised on the liability to pay, not what the proper remedy is. And it seems to me that you're blurring the line by wandering into the area of remedy when you have been focusing, and I think properly so, on the issue of liability. And why do we even need to consider the efficacy of the remedy now, how it would play out in terms of the pension fund if the statute, if your argument is correct as to liability? That's essentially the problem with the district court on remand, is it not? Right. Why are we even going there? I agree, Your Honor. The question here is whether the district court erred in saying you get to zip. And whether it's mandatory and whether it's discretionary, the district court. I don't think, do you think I made up, knowing what your position was on certain years, did I make that up? I thought I read that. I thought you make that argument or say that in this brief in this case, don't you? Yes. I didn't make that up. Yes, Your Honor. I didn't say you did, Your Honor. No, I think Judge Shedd is pointing out a really good contradiction in what you're doing. You're wandering into remedy when your argument is premised on liability. Well, the issue is whether there is a remedy at all, not what the remedy will be. Thank you. Thank you, Mr. Brownshaw. Mr. Nolan? Thank you. May it please the Court. At the outset, I would like to note that this is a unique case involving a novel legal issue that was first raised by His Honor Judge Shedd. I saw that footnote that somehow I thought of something nobody else had ever thought of or something like that. That was my impression. Certainly, the EEOC hadn't thought about it because they never raised it in a district court until we were here at oral argument. That's, I think, important to remember. The decoupling issue . . . That is important to remember for why. That's not important as to whether or not there was a violation, is there? I think it's important because it was something brand new. I know that, but if in fact, that is correct. You may not think it's correct, but if in fact the answer to that mathematical question I raised is correct and it makes out age discrimination, what does that have to do with the remedy for that age discrimination? It ties in with Supreme Court law, which I will get to in a moment, because that is one of the factors that the Supreme Court took into account as to whether or not the individuals running a pension plan think that they're doing something wrong. They think they're doing something right. They base their decisions on actuarial advice. It all comes down to whether you are liable under the statute to pay, irrespective of your good intention, isn't it? Whether the incorporation of the FLSA language puts that burden on you. As far as I know, the liability in this case has already been determined when the Supreme Court denied cert after the second appeal of this Court. That issue is no longer on the table. Well, aren't you liable to pay the full amount? No, we're not. Why not, under the statutory language? Well, because first of all, this is not a wage case involving minimum wages or overtime compensation, nor is it the typical ADEA case where someone has been fired because of their age, someone has not been promoted because of their age, or someone has been failed to be hired because of their age. Instead, it is a pension plan case, and that makes all the difference. The plain language of the . . . The Congress decided to put it in the Fair Labor Standards Act in terms of looking at it once you determine liability, correct? Well, I believe, in Judge Shedd's word, there is a conflict. I have frankly had a hard time wrapping my head around when you line these two statutes together in trying to figure out what it means. That notwithstanding, it still put it in FLSA in terms to look at to decipher. Yes. Judge Shedd makes a good point in terms of that's a question raised there, but there's no question raised that they put that in that arena. That's in there, but the question is what . . . You start off by saying, well, this is not overtime, this is not minimum wage violation, but we do have to look at those devices in determining what the shell compensation is. Yes, but when you . . . The ADA makes no distinction between regular wages and pension payments. Well, my point I'm trying to make is when you line these two statutes up together and try to make sense of them, what ends up happening is, as Judge Shedd said, the provision that jurisdiction means power to grant such legal and equitable relief as may be appropriate, that modifies all that goes above it in the ADEA. It is the overarching principle that governs this case. Well, now, what about the argument that this is a remedial statute, and if the statute can be read two ways, aren't we required to read it to say that you are liable in the amount of the unpaid wages? Well, we are liable. The question is what is the appropriate legal or equitable remedy? If the statute provides you . . . if a remedial interpretation dictates that the statute provides you no equitable remedy, and you have to go first to satisfy the amount of the unpaid wages, and then there may be other relief that's granted. But all of this is leaving out the main reason why Judge Bennett decided what was appropriate, which is the term in the plain language of the ADEA, was what's appropriate . . . Right, because he jumped to the catch-all without looking at the earlier provision that says you've got to pay. Well, I think . . . So you've got to pay, and maybe there's some other relief that you can get. And you're not answering the question, Mr. Nolan. Mr. Nolan, the question is if the statute is susceptible to two interpretations, and one of them the remedial that favors the worker, why are we not required to adopt the interpretation that favors the worker, which would be, in this case, that Baltimore County is liable and that the additional relief paragraph is simply additional relief. It doesn't give the court the authority to invoke equitable powers to negate the statutory directive to pay. Why is that not required under a remedial interpretation of the statute? Because this is a pension case, a pension plan case, and in the trilogy of Supreme Court cases, Manhart, Norris, and Long . . . Title VII cases where back pay is discretionary. Isn't that correct? And also, Title VII is a remedial statute. But it affords discretion to the court to allow, to determine the appropriate amount of relief. And if the remedial interpretation of FLSA is that you've got to give the money, then how do we bend in your direction? I don't know. The plain language of the ADEA says that the judge had the discretion to grant such legal or equitable relief as may be appropriate. The judge then looked at three Supreme Court cases. Granted, they involve Title VII, but they're discrimination cases. And liability was determined. And notwithstanding that liability determination in all three cases, the Supreme Court said, we are not, as a matter of public policy, we are not going to burden the pension plans in these cases with mandatory retroactive relief. Because Title VII doesn't require us to do so. Right. Well, Your Honor, again, I can only refer back to the plain language which gave the . . . So, let me try this. Let's take your, to the logical extent of your argument, that you could jump to such other equitable relief as required, correct? Because that's what you said. Equitable relief can be given. So can legal. It says legal and equitable. Okay. All right. You agree, then, that relief, whatever it means, must inure to the benefit of the prevailing party, correct? No, Your Honor, because in the context of the sentence, it says the court shall have discretion to grant such legal and equitable relief as may be appropriate. Yes. That means if the court determines it's not appropriate, because three Supreme Court cases say it's not, as a matter of public policy, something you do to destroy a pension plan, then it's not going to be done. No, it says such equitable relief as may be appropriate. So you read that to mean that they could just read that out and give nothing. That's what the Supreme Court did in the three cases. The concept . . . I think, I know you disagree, but those are cases where back pay is discretionary and those kind of . . . But here, it's a shall, right? You start off with making people whole, and then there's such equitable relief. You're saying you can make that read, I can say, as a matter of equity and fairness, and it's fairness to whom? Fairness to the 9,500 current county employees. You don't have any case where someone is one, that relief is defined in the context of someone other than the prevailing party? You're saying you can skip over the people who are non-parties, and you measure equitable relief based on somebody else? That's why I think we got into the whole thing with Mr. Ramshaw. You come in and talk about damaging and sort of suggesting a relief for somebody else, and that's what Judge Jare was saying. But you take it to mean you could say, all right, you know what? I've looked at this case. You won, but I'm going to see what somebody else who's not a party, what relief might be fair to them? Your Honor, again, I know it's repetitious, and I apologize. It's not repetitious. I don't think you've answered the question. The three Supreme Court cases all involve the exact same scenario in which it was determined that there were unequal contributions. That's Manhart. That's this case. And they said, we're not granting this monetary award. Same thing in Arizona versus Norris. There was lower benefits for females. They said, no, we're not going to grant retroactive monetary relief. Same thing in Florida versus Long. Sex-based options, but we're not going to grant retroactive monetary relief. Those are a... What statutes were they under? I'm sorry? What statute? Statutes. Statutes. The statute. Well, Your Honor, I guess, but the concept is the same. Three cases. I guess we don't want to answer that question. There are three Supreme Court cases. I mean... Statutes. Statutes. Well, if it rises or falls on whether it's Title VII or the ADA, I can only say to the Court, I think it is the same concept. But that's not what he asked you. He asked you what were the statutes involved in those cases. Do you know? Title VII. Then that's the answer to his question. I'm sorry. I missed that. Now, you may say, but I don't think that matters. I don't. Because the concept's the same. I think, but he was just asking you to make the point... I misunderstood. I apologize. There were all three Title VII cases involving different, and in fact, the cases, the Manhart case was 1978, Norris was 83, and they still said, under the circumstances present there, that the people administering the plan thought they were in compliance with Manhart, but apparently they weren't. So we're not going to grant you... Well, but... Excuse me. You go ahead. But Manhart, right at page 717, says, Title VII does not require a district court to grant any retroactive relief. So it seems to me you're burying the lead. My response, Your Honor, is the language in the ADA, if you compare, it says the court. The language in the FLSA says any employer shall be liable, or any employer shall be They're not talking about the power of a court. The ADA talks about the power of a court, and it says the court has the discretion. But you, to be fair to you, with my question, I'm going to ask you, you carrot words into, in your interpretation... I'm sorry, Your Honor? You carrot words into the statute. Do you remember when I said to Mr. Ramshaw, you carrot in any other such relief or such additional relief? That's the way he reads it. But you read it as if it says, basically, notwithstanding any other provision of law, the court has the discretion to grant any such equitable or legal relief, correct? That's correct. And I would also... And that's the point. But my point is, as I see it, to make it really completely jibe, you have to carrot in some say, in looking at this statute, I think you do, maybe nobody else agrees with that, we have to decide, does carroting in your words, notwithstanding what's said above, you don't have to give any relief? Or do we carrot in what really the EEOC's provision is? You have to do that, and you can give any other additional relief as necessary. And that's why I go back to, and I think that we've heard, you've heard from the bench, this is a remedial statute. So why wouldn't we pick the EEOC reading as most likely to, when we're faced with that issue, we pick, I think we would be required to, or certainly it should be, under not just our judgment, but under the law, that you look to make the remedial statute expansive rather than restrictive. And it seems to me that argues against your view. Your Honor, all I can say is that the... All I can say is, Your Honor, you're wrong. No, well, I think that, you know, we're trying to dissect this. But it's the remedial statute. It is a remedial, and I say Title VII is too, and... But this is remedial. Title VII is a different issue. But we're looking at this issue, as I've just laid it out for you, we've laid it out with questions. Why would we decide, faced with that, we would take the less expansive reading rather than the more expansive reading, which actually doesn't do any more harm to the statute language than the restrictive reading does? Because either way, we have to edit it. We have to sort of judicially edit it. Well, Your Honor... Why would we go, in a remedial statute, why would we go more restrictive? Because, again, Your Honor, it's a pension plan case. And I would like to just give a brief quote from Manhart, and the same quote was repeated in Long. So your second view is that the district court read the statute correctly, and he has... Plain meaning. Plain meaning in the statute. He has unlimited discretion to do whatever he wants to, notwithstanding any other provision of law, number one. But if you're wrong on that, we should still read it the way you say, because this is a The pension part comes in, in the language appropriate. And in determining what's appropriate, you look at the fact that this is a pension case. And then you look at the three Supreme Court cases, and the principle is exactly the same. It doesn't have any difference. The quote is, from Manhart and Long, quote, The rules that apply to these funds, pension funds, should not be applied retroactively unless the legislature has plainly commanded that result. The ADEA does not command that result. That's what the Supreme Court has said. Moreover, since Manhart was decided in 78, Norris was decided in 83, and Long was decided in 88, Congress has not enacted any legislation that mandates... Period. They've enacted no legislation, period, on anything, as best I can think of. Well, that mandates retroactive monetary relief in pension cases. They know what the Supreme Court said in these three cases. No, they don't. I don't know. I probably shouldn't say it. My colleagues, I'm going to ask you to endorse this. Congress doesn't have the foggiest idea about any of this. Your Honor, if I could... I know we say that. I work there. I work there. There might be two or three staffers that knew, and one or two senators or congressmen or representatives. They don't know. If they walked in, the people who sponsored this legislation and walked in and saw this argument, they would think they were in the wrong courtroom, and they would walk somewhere else. I mean, really. You're fueling my cynicism, Your Honor. 67, the ADA is passed. New statute, the language that I think has plain meaning, which we've talked about, is in there because they say, look, this is new. We're incorporating the FSLA. We have to finally say to the court, you have the power to do what you think is appropriate as a judge. That's what the plain language says. Let me ask you this. Why is it, do you think, I know we see some cases in some context that if it's discretionary, that we need to think about other factors like the fund and other recipients, but you could have a claim against a company that might drive a company to borrow other money to pay off the damages or maybe to even go bankrupt. Why is there any policy that people who have been discriminated against bear the burden of being discriminated against and the burden of not getting the remedy because other people want to benefit? Why is that so? It's explained in detail in the three cases, Your Honor. I know, but why is that so? I know what those cases say, but if it's true that Baltimore County is at fault here, why shouldn't Baltimore County be responsible, not the fund, but Baltimore County be responsible for either making the payment or funding with their contributions to the retirement plan, funded in a way that makes up for the mistake and error that Baltimore County made in discriminating against people because of age? Why shouldn't they be required? Because the analysis is, and Judge Bennett found, the county had reason to believe that its pension plan contribution rates were lawful prior to the denial of cert in this case. The county's act... Let me stop and say, I don't see how you could. I asked one hypothetical question based on math, and it's clear to me then, it's been clear to the courts, that it is age discrimination. I know you had actuarials that said it wasn't, but they were just wrong. Well, Your Honor, the fact is that there's no law, there's no statute, there's nothing anywhere that says if you, and this is what Judge Legge said in his second decision, you have two independently lawful pension plan provisions. One is the contribution rates, and you have the early retirement option. They're both lawful. And it was an unintended consequence, unknown to the county, that somehow that decoupled the... That's fine, but the problem is you're still discriminating against the county. Your Honor, that's been decided, I agree. But now we have to talk about what to do. And I'm saying what to do. Why, if the county was at fault, because this is against the county, isn't it? Yes. Why shouldn't the county... Listen, and maybe I should say this more clearly. I remember Judge Franklin Johnson. Do you know who that is by any chance? He was a district judge in Alabama. Alabama. I'm sure my colleagues do. And he entered a desegregation order, and I'm sure we remember, and the state of Alabama suggested they weren't going to do it. And you know what he said? I don't know if he said it in order. Maybe he said it in his biography. He was going to sell off state forest in Alabama. He said, you can't ignore a remedy that a federal court orders. And if I have to, I will order state property be taken and sold to be sure a person's rights are vindicated. I don't know about that, but it seems to me Baltimore County should be the person who comes... And it shouldn't be an argument. This is what I don't understand, and I'll stop. I'll try to end with the question. People are discriminated against at the same time other people in the plan were not being discriminated against. Those people who weren't being discriminated against got their money. Those people... Now we have to say, well, because they want their money in the future. The people who are discriminated against, sorry, we just can't make you whole because  That's not fair. Everybody got their benefits, Your Honor. There was never any claim that benefits were not... They didn't get as much as... But they had to pay more. That's the... It's the net difference. That's all. Whether it's pay in or get out, somebody is disadvantaged because of their age. That's not worth all... The way that it's probably going to work is that if the county gets... Then the answer is... That's just mechanical. The answer is then, refund them what they paid in that they shouldn't have paid. Your Honor... It's not easy. It's just... This case is about making people whole in terms of money that they had to spend that they shouldn't have to or that they didn't get that they were supposed to. With the amount of money that may be involved here, Your Honor, every option is open as to how that would be accomplished. More than likely, the money would result in increased rates for everybody who is a current employee would be paying a higher rate. That's one of the realities of the situation. Even though it's Baltimore County, the defendant, you have a separate pension plan, the employee's retirement system, and the money that is contributed... We may not like it. We may not like it. But the answer to that is, for you people to get what you're entitled to, the plan... I want to be careful. Didn't treat... I don't want to say cheated. Didn't treat people fairly. And we've got to be fair to them. And we wish we could charge you lower rates, but guess what? You don't get the benefit from the fact that we discriminated against somebody. It seems to be pretty straightforward, but... Well, that will be on the backs of the people in the plan. And that itself is not fair. So it's... It certainly is fair. But the... Again... Listen, but that is arguing against what we thought we were going to get or how much we have to pay compared to somebody that's been disadvantaged. But at any rate, what do you make of, and I guess you're happy to see what appears to be the EEOC stance, that they don't really go after you for all those years. What I see at the bottom line is they want to say we have the discretion, not the court. In other words, the court under the... Let's stop for a second. Let's say they're right on that the court doesn't have the discretion. What do you think about their view then? Well, I... You like it, don't you? I think, yes, because, in other words, for them to say it's meant... Do you think that's laches, or what do you think that is? Laches is a sort of slippery item. I would say that the trend is... When I ask what do you think is the justification, do you think they're legally justified to say we don't want to pursue all the years, even if we can? I can't control what they're going to say. I would say that if nothing else, as has been pointed out... I didn't ask you if you could control it. I said what do you think justifies that position. Is there something that justifies it? They apparently feel like because they were... It's their discretion. Their delay was so unreasonable, which they've admitted, that they... That sounds like laches, doesn't it? I think it does. Okay. But the delay they agree with... I got you, and I've asked Roger. I mean, Chief Judge, I've asked more. I thank you for answering my questions on it. There may be others. Thank you, sir. Thank you. Thank you. Mr. Cramshaw. Mr. Cramshaw. It's important to note that the fourth sentence does not say, jurisdiction to grant such legal and equitable relief as may be appropriate. It says, jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, deterrence and compensation. So even if the district court has discretion over how much back pay to award, it has to do it in... It has to make a decision to effectuate the purposes of the chapter. You're not conceding that the district court has discretion, are you? No. No. We're making two arguments. One is back pay is mandatory under the... These are alternative arguments. Is that what you're saying? Yes. Yeah. If you decide that back pay is discretionary, then we believe that the three factors that the district court relied on, to say you get no relief, did not justify that. The district court abused its discretion in deciding that those three factors, the union's complicity, the Supreme Court decisions and latches, that they justified granting no relief in this case. What do you think to effectuate the purpose of this chapter? You said that. Make your argument. You think that means what? It means that that limits the relief that may be appropriate. It means that it rules out looking at the top as being discretionary. You said those words, but in your argument, what is your point about those words? Because that guide... It ends with those words. Tell me what the next sentence is. So that if this court reads that 626B, the fourth sentence, to avoid the mandatory nature of back pay according to the first sentence, it still must say that the discretion that the district court has is not to do whatever he thinks is appropriate. See, I thought maybe, I thought the argument you were going to make is may be appropriate to effectuate the purposes of this chapter, and it's clear from above that the purpose of this chapter is mandatory back pay. But that's another argument. That's not the argument you actually made. Yes. Right. No, I'm saying that the Supreme, we know... And let me say Judge Heenan saw that faster than I did, because she saw it as an alternative. I thought it was just a reinforcement of your view that that fourth sentence does not in any way limit the mandatory natures. I understand. Yeah. No, I'm just saying if you decided it's discretionary, it's important to realize that the discretion of the district court is limited by... Whatever is appropriate still has to be relieved that carries out the purposes of the chapter. Yes. Yes, Your Honor. And then the county relies very heavily on the three Supreme Court cases. And there is the difference we've already talked about, that those are Title VII cases, this is an ADA case. But the more, as well, what the Supreme Court was doing in Manhart, Manhart, Long, and the other one, was it was revolutionizing the pension industry. Because almost all pensions use sex-based actuarial tables. And so what they were doing, and the Supreme Court pointed out in the first one in Manhart, that this was going to affect 50 million employees, $40 billion in assets. And the Supreme Court also depended heavily on, A, its belief that the pension administrators could reasonably believe what they're doing was lawful, and that, in fact, it would be unlawful to fix it, and that they would comply immediately with the new rule that the Supreme Court was putting in place. Okay. Here, here we have a case that affects only one pension fund that we know of in the country, and we know that Baltimore County doesn't comply promptly with the law. Their liability, the unlawfulness of these excessive deductions, was determined in 2014, and they did not comply promptly. Let me say this. I hate to admit this on the record, but I'm trying to walk away from a position in this case that I'm a genius, with my question that I ask at oral argument. I mean, I know the court cited that to go, that's a novel question, and they point out that at least it's asserted. You never thought about it. I've spent some time thinking about things in my life, but I just got out a piece of paper and a pencil and looked at the numbers and just said that doesn't seem right to me. And it seemed to me, quite frankly, it's straightforward that this isn't very hard to figure out, that it does discriminate against people. Yeah, I don't know why they interpret it that way. From our point of view, all you were doing was giving a specific example of why the Commission was right that time value of money did not justify. No, no, the Commission takes the position that I'm really not a genius. The Commission took the position that you did a beautiful job of describing why we were right. If there are no further questions, I thank you very much. Thank you. All right, we'll come down, greet counsel, and then proceed to our last case for the term.
judges: Roger L. Gregory, Dennis W. Shedd, Barbara Milano Keenan